UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
BRIAN D. PETTIFORD,

                                            **ORDER**

                Plaintiff,                    14 Civ. 6271 (JCM)

      -against-

THE CITY OF YONKERS, YONKERS POLICE
OFFICER VINNIE DEVITO, YONKERS POLICE
OFFICER ALEX DELLADONNA, YONKERS POLICE
OFFICER PETER SCHWARTZ, YONKERS POLICE
OFFICER DENNIS MOLINA #646, YONKERS
POLICE OFFICER CHRISTIAN KOCH #699, ALL
DEFENDANTS INDIVIDUALLY AND IN THEIR
OFFICIAL CAPACITIES AS EMPLOYEES OF
THE CITY OF YONKERS,

                Defendants.
-----------------------------------------------------------------X

       Brian D. Pettiford ("Pettiford" or "Plaintiff") commenced this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 on August 1, 2014. (Docket No. 1). From March 2016 to November 2016, Paula Johnson Kelly, Esq. ("Ms. Kelly") represented Plaintiff in this matter. On December 7, 2016, Ms. Kelly's motion to withdraw as counsel was granted. (Docket No. 55). The case was subsequently dismissed on September 7, 2017 for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure. (Docket No. 60). On July 10, 2018, the case was reopened. (Docket No. 67). Shortly thereafter, Elias J. Sayegh, Esq. appeared on behalf of Plaintiff. (Docket No. 74). Ms. Kelly now seeks: (1) attorney's fees under a theory of *quantum meruit* plus costs, and (2) a charging lien pursuant to N.Y. Judiciary Law § 475. (Docket Nos. 120, 121, 122). Plaintiff opposes the motion. (Docket Nos. 142, 143). Ms. Kelly filed a reply in further support of her motion. (Docket Nos. 145, 146). For the reasons that follow, the motion is granted in part and denied in part.

1

## I. BACKGROUND[1]

Plaintiff's *pro se* complaint sets forth claims of illegal search, false arrest, malicious prosecution, and wrongful conviction. (Docket No. 1). Plaintiff initially contacted Ms. Kelly on February 9, 2016. (Docket 122 ¶ 3). Thereafter, Ms. Kelly conducted research into Plaintiff's claims and consulted with Plaintiff concerning conferences and discovery matters. (*Id.*). Plaintiff formally retained Ms. Kelly on March 22, 2016 to represent him in the instant litigation, pursuant to a retainer agreement (the "Retainer Agreement"). (*Id.* ¶ 4).

The Retainer Agreement states under "Client's Rights and Responsibilities":

> You understand that your failure timely to pay costs or fees when billed, your failure to communicate and/or cooperate with us during the negotiations or litigation, or your failure to provide us with complete and truthful information, will be grounds for our Firm to withdraw from representing you [sic] interest in this matter.

(Docket No. 122 ¶ 4).

The Retainer Agreement also provides that if there is a recovery, attorney's fees for negotiation and litigation were to be provided on a contingent fee basis of "33.33% of any and all net amounts recovered and economic benefits received" instead of paying Ms. Kelly's hourly rate, which was $400 per hour. (*Id.* ¶ 5). It further states that the firm's invoices "will be rendered monthly and payment is due within fifteen (15) calendar days of the date of the invoice." (*Id.* ¶ 6). Furthermore, the Retainer Agreement contains a "Discharge of Attorney" provision, stating:

> You have the right to terminate our services at any time upon written notice to us. Unless we are discharged for failure to perform the services agreed upon, we shall be entitled to the full fee specific in the section on FEES and LIENS, plus the reimbursement of any unpaid expenses. At our option, upon

---
[1] The facts are drawn, in part, from the Affirmation of Paula Johnson Kelly, Esq. in Support of Motion For Attorney's Fees ("Kelly Decl."). (Docket No. 122).

> discharge, we shall be entitled to our regular hourly rates as set forth above instead of a percentage.

(*Id.* ¶ 7).

On November 28, 2016, Ms. Kelly filed a notice of motion to withdraw as counsel, (Docket No. 53), on the grounds that Plaintiff breached the Retainer Agreement and failed to communicate or cooperate with Ms. Kelly, as well as failed to make the payments under the Retainer Agreement. (Docket 122 ¶¶ 11, 13). On December 7, 2016, Ms. Kelly's motion to withdraw was granted. (Docket No. 55). Ms. Kelly now seeks: (1) an award for attorney's fees in *quantum meruit* in the amount of $42,955.00, reflecting (a) $40,240.00 for 100 hours and 36 minutes worked at an hourly rate of $400, and (b) the $2,715.00 balance of the initial retainer fee; (2) reimbursements for disbursements incurred in the amount of $2,083.64; (3) interest of 1.5% per month and 18% per annum on the past due unpaid amounts; totaling $2,346.92, and (4) a charging lien for attorney's fees pursuant to N.Y. Judiciary Law § 475. (Docket Nos. 121,[2] 122). Plaintiff opposes the motion on the grounds that: (1) the amounts of attorney's fees in *quantum meruit* and of a charging lien are determinations to be made by the Court at an evidentiary hearing, and (2) Ms. Kelly's demanded fees are neither fair nor reasonable. (Docket No. 143).

## II. DISCUSSION

New York law generally recognizes three remedies for an attorney making a fee claim against a former client: (1) a charging lien, (2) a retaining lien, and (3) a plenary action in *quantum meruit*. *See Bonnaig v. Nunez*, No. 12 Civ. 1853(HB), 2012 WL 6200977, at *3 (S.D.N.Y. Dec. 11, 2012), *aff'd,* 546 F. App'x 55 (2d Cir. 2013); *Milner v. City of New York*, No.

---

[2] Docket No. 121 incorrectly totals the number of hours Ms. Kelly worked as 105 hours and 45 minutes. The actual time sheets reflect a total number of hours worked after the Retainer Agreement was drafted as 100 hours and 36 minutes. This is the same number set forth in the Kelly Decl. (Docket No. 122 ¶ 29).

3

10 Civ. 9384(JGK)(GWG), 2012 WL 3138110, at *10 (S.D.N.Y. Aug. 2, 2012), *report and recommendation adopted*, 2012 WL 6097111 (S.D.N.Y. Dec. 10, 2012). The remedies are not exclusive, but cumulative. *Butler, Fitzgerald & Potter v. Gelmin*, 235 A.D.2d 218, 219 (1st Dep't 1997). Here, Ms. Kelly seeks two of these remedies: (1) a charging lien, and (2) a judgment of attorney's fees in *quantum meruit* for legal services rendered and disbursements incurred, plus costs and interest. (Docket No. 121 at 5). The Court will address each in turn.

### A. Charging Lien

"Under New York law, an attorney who is discharged is statutorily entitled to a charging lien on any monetary recoveries obtained by the former client in the proceedings in which the attorney had rendered legal services." *Stair v. Calhoun*, 722 F. Supp. 2d 258, 267 (E.D.N.Y. 2010); *see also* N.Y. Jud. Law § 475. Section 475 provides, in pertinent part:

> [f]rom the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department … the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come … The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law § 475. New York charging liens are "enforceable in federal courts in accordance with its interpretation by New York courts." *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998) (internal quotations omitted). The statutory charging lien "is a device to protect counsel against 'the knavery of his client,' whereby through his effort, the attorney acquires an interest in the client's cause of action." *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 177 (2d Cir. 2001) (quoting *In re City of New York*, 5 N.Y.2d 300, 307 (1959)). "[T]he New York cases make clear that the charging lien provided for by Section 475 is

for the benefit of an 'attorney of record' only." *Itar-Tass*, 140 F.3d at 450. "[A]n attorney may be considered 'of record,' and thus entitled to a charging lien, 'by [1] participating in a legal proceeding on the client's behalf or [2] by having his [or her] name affixed to the pleadings, motions, records, briefs, or other papers submitted in the matter.'" *Hampshire Grp. Ltd. v. Scott James Co., L.L.C.,* No. 14CV2637(JGK)(MHD), 2015 WL 5306232, at *5 (S.D.N.Y. July 27, 2015) (quoting *Hoganwillig, PLLC v. Hendel*, 126 A.D.3d 1311, 1311-12 (4th Dep't 2015) (citing cases) (internal quotations omitted)). The "charging lien attaches when an action is commenced[,]" *Ross v. Mitsui Fudosan, Inc.*, No. 97 Civ. 0975(PKL), 1998 WL 556171, at *2 (S.D.N.Y. Sept. 1, 1998), and "by definition" attaches "to the proceeds obtained as a result of the action." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 149 (2d Cir. 1998). "A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action." *Antonmarchi v. Consol. Edison Co. of New York*, 678 F. Supp. 2d 235, 240 (S.D.N.Y. 2010) (internal quotations and citations omitted).

"[I]n order to establish a lien under Section 475, 'there must be asserted a claim which can eventuate in there being proceeds payable to, or assets recoverable by, the client as a result of the efforts of the attorney.'" *Rosewood Apartments Corp. v. Perpignano*, No. 99 Civ. 4226(NRB), 2005 WL 1084396, at *3 (S.D.N.Y. May 5, 2005) (internal citations omitted). "[A]ttorneys who terminate their representation are [] entitled to enforce their charging liens, as long as the attorney does not withdraw without 'good cause' and is not discharged for 'good cause.'" *Stair*, 722 F. Supp. 2d at 267. Here, there is no dispute that Ms. Kelly was Plaintiff's attorney of record, (*see* Docket No. 26), and that she withdrew from the case and was not discharged for cause. *See Stair*, 722 F. Supp. 2d at 265 (noting that failure to pay legal fees is a "legitimate ground" for withdrawing from a case); *Farmer v. Hyde Your Eyes Optical, Inc.*, 60 F.

5

Supp. 3d 441, 445 (S.D.N.Y. 2014) ("Satisfactory reasons for withdrawal include 'a client's lack of cooperation, including lack of communication with counsel, and the existence of irreconcilable conflict between attorney and client.'") (quoting *Naguib v. Pub. Health Solutions*, No. 12-CV-2561(ENV)(LB), 2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014)). Accordingly, the Court finds that Ms. Kelly is entitled to a statutory charging lien.

A charging lien is equitable in nature, and the "overriding criterion for determining the amount of a charging lien is that it be 'fair.'" *Sutton v. N.Y.C. Transit Aut.*, 462 F.3d 157, 161 (2d Cir. 2006) (internal citations omitted) *see also Winkfield v. Kirschenbaum & Phillips, P.C.*, No. 12 Civ. 7424(JMF), 2013 WL 371673, at *2 (S.D.N.Y. Jan 29, 2013). Thus, "the proper method of fixing the sum of the lien is through a *quantum meruit* analysis, which requires 'ascertaining the reasonable value of the services rendered[.]'" *Agence France Presse v. Morel*, No. 10-CV-2730(AJN), 2015 WL 13021413, at *8 (S.D.N.Y. Mar. 23, 2015), *aff'd sub nom. Presse v. Morel*, 645 F. App'x 86 (2d. Cir. 2016) (quoting *Sequa Corp.*, 156 F.3d at 148); *see also Bretillot v. Burrow*, No. 14-cv-7633(JGK)(MHD), 2015 WL 5306224, at *13 (S.D.N.Y. June 30, 2015), *report and recommendation adopted*, 2015 WL 6455155 (S.D.N.Y. Oct. 26, 2015) (same). Although Plaintiff argues that the amount of the charging lien is to be decided by the Court only after a favorable result, (Docket No. 143 at 8), the amount of the lien is "not dependent upon the result reached in the underlying suit." *Antonmarchi*, 678 F. Supp. 2d at 242 (internal citations and quotations omitted); *see also Sequa Corp.*, 156 F.3d at 148 ("It is undisputed that it was proper to determine the amount of [party's] charging lien on a *quantum meruit* basis…"). In fact, "[t]he charging lien should be fixed at the 'fair and reasonable value of the services rendered, determined at the time of the discharge and computed on the basis of *quantum meruit*.'" *Winkfield*, 2013 WL 371673, at *2 (internal citations omitted).

6

B. *Quantum Meruit*

Ms. Kelly also seeks an order directing Plaintiff to pay her the fair and reasonable *quantum meruit* attorney's fees for legal services rendered and disbursements incurred.[3] (Docket No. 121 at 5). "Unlike the charging lien, an application in *quantum meruit* is a cause of action that can be exercised by the attorney against all of the former client's assets—not merely against the recovery obtained from a defendant." *Hampshire Grp.,* 2015 WL 5306232, at *15 (internal quotations omitted). In order to recover in *quantum meruit*, New York law requires a movant to establish: "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 98 (2d Cir. 1994) (internal quotations omitted). The first three requirements are not in dispute. Ms. Kelly performed legal services, Plaintiff accepted her services, and Ms. Kelly expected to be compensated for her services pursuant to the Retainer Agreement. (*See* Docket No. 143 at 6). The issue before the Court is the reasonable value of the legal services rendered. "Among the factors to be considered in [a *quantum meruit*] analysis are the difficulty of the matter, the nature and extent of the services rendered, the time reasonably expended on those services, the quality of the performance by counsel, the qualifications of counsel, the amount at issue, and the results obtained (to the extent known)." *Sequa Corp.*, 156 F.3d at 148.

---

[3] Plaintiff further argues that the Court should determine the amount of recovery under *quantum meruit* in a separate evidentiary hearing. (Docket No. 143 at 8). "However, when presented with detailed submissions, courts routinely decline to hold such a hearing." *Kovach v. City University of New York*, No. 13 Civ. 7198(LGS), 2015 WL 3540798, at *4 (S.D.N.Y. June 4, 2015*); see also Antonmarchi*, 678 F. Supp. 2d at 241 ("A hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis.") (internal quotations and citations omitted)). As noted, here, there is no dispute that Ms. Kelly was discharged without cause and the records provided are detailed. Accordingly, the Court finds it appropriate to determine the issue of attorney's fees based on a review of the records and the parties' submissions.

7

The first factor to consider is the difficulty of the matter. At the time Ms. Kelly worked on this matter it was a garden variety civil rights action alleging violations of Plaintiff's rights under the Fourth & Fourteenth Amendments arising out of an allegedly illegal search and seizure and subsequent malicious prosecution. Although this case has recently evolved into a more complicated matter, in 2016 when Ms. Kelly worked on the case it was a garden variety action. The second factor is the nature and extent of the services rendered. Ms. Kelly's services were limited. When Ms. Kelly filed her Notice of Appearance, the case was nearly two years old and was in the middle of discovery. During her time on the case, Ms. Kelly filed several letters with the Court requesting extensions of time and moving to compel document production. (Docket Nos. 27, 33, 40, 42). She conducted document review, defended Plaintiff's deposition, and took one deposition of Defendant Molina. (*See* Docket No. 122-5 at 2-6). Ms. Kelly appeared in Court for four conferences, and two of those appearances were related to her request to be relieved as counsel. (*See* April 28, 2016, July 29, 2016, October 20, 2016, December 7, 2016 Minute Entries). Her motion to withdraw was granted on December 7, 2016, a little over eight months after she appeared in the action. The fourth and fifth factors — the quality of performance by counsel and the qualifications of counsel — weigh in Ms. Kelly's favor. Ms. Kelly is a seasoned attorney, with over 26 years' experience, and she conducts herself with the utmost professionalism. She has handled many civil rights cases and she ably advocated on behalf of Plaintiff. The sixth and seventh factors, the amount at issue and the results obtained, are unknown at this time. The third factor, the time reasonably expended, requires a longer analysis and courts generally use the "lodestar" method. *See Alicea v. City of New York*, 272 F. Supp. 3d is 603, 608 (S.D.N.Y. 2017).

To determine the reasonable time expended, the Court applies the "lodestar" method, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Alicea*, 272 F. Supp. 3d at 608; *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. at 542, 553 (2010) ("The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee.") (internal citations omitted); *Millea v. Metro-N.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both [the Second Circuit] and the Supreme Court have held that the lodestar … creates a 'presumptively reasonable fee.'") (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 183 (2d Cir. 2008)). In making this determination, "[h]ours that are 'excessive, redundant or otherwise unnecessary' are to be excluded." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Hensley v. Eckerhart*, 461 U.S. at 424, 434 (1983)). The fee applicant bears the burden of documenting the hours reasonably spent by counsel, and the reasonableness of the hourly rates claimed. *Allende v. United Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011). In sum, the Court should "(1) apply a reasonable hourly rate (2) to a reasonable number of hours (3) to arrive at a 'presumptively reasonable fee," which (4) may be subject to further adjustment to arrive at an actual reasonable fee award." *McDow v. Rosado*, 657 F. Supp. 2d 463, 467 (S.D.N.Y. 2009). The Court "has 'considerable discretion' in determining what constitutes a reasonable fee award." *Indep. Project Inc. v. Ventresca Bros. Constr. Co., Inc.*, 397 F. Supp. 3d 482, 493 (S.D.N.Y. 2019) (internal citations omitted).

1. **Reasonable Hourly Rate**

Plaintiff opposes Ms. Kelly's requested fees on the ground that they are "based upon overly high hourly rates" of $400. (Docket No. 143 at 6). Courts retain "considerable discretion" in determining "a reasonable hourly rate." *Arbor Hill*, 522 F.3d at 190. To arrive at a reasonable

fee, courts must determine whether the requested hourly rates are in line with those "prevailing in the community for similar services by lawyers of reasonably comparable skill, expertise, and reputation." *Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) (internal quotations omitted). The "prevailing community" for these purposes is "the district in which the court sits." *Id*; *see also Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 290 (2d Cir. 2011) (same). "Courts should rely on both evidence submitted by the parties as to the rates they typically charge … and [the court's] own knowledge of comparable rates charged by lawyers in the district." *Weather v. City of Mount Vernon*, No. 08 Civ. 192(RPP), 2011 WL 2119689, at *2 (S.D.N.Y. May 27, 2011) (internal quotations omitted). Ultimately, a "presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotations omitted). The burden rests with the fee applicant to justify the reasonableness of his requested rate. *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

Here, Ms. Kelly requests a rate of $400 per hour. (Docket No. 121 at 13). Ms. Kelly is an experienced litigator; she was admitted to the New York Bar in 1994 and has been a member of the bar of the Southern District of New York since 1996. (Docket No. 122 ¶ 30). Since her bar admissions, Ms. Kelly has litigated a variety of cases, including medical malpractice, personal injury, negligence, corporate, employment, and civil rights. (*Id.*). Since January 2013, she has been charging an hourly rate of $400 to her private, corporate, and civil rights clients. (*Id.* ¶¶ 31, 36; *see also* Docket No. 122-6 at 2-5). Courts in this District have found the customary rate for litigators with similar levels of experience and skill ranges from roughly $350 to $600 per hour.

*See Jean-Louis v. City of New York*, 342 F. Supp. 3d 436, 442 (S.D.N.Y. 2018) (which found attorney's hourly rate of $400 per hour reasonable in Section 1983 case); *Salama v. City of New York*, 13-cv-9006(PKC), 2015 WL 4111873, at * 2 (S.D.N.Y. July 8, 2015) ("Rates found reasonable by courts in this District for experienced civil rights attorneys appear to cluster in the $350-450 per hour range."); *Munoz v. Manhattan Club Timeshare Ass'n, Inc.*, No. 11-CV-7037(JPO), 2014 WL 4652481, at *4 (S.D.N.Y. Sept. 18, 2014) *aff'd,* 607 F. App'x 85 (2d Cir. 2015) (finding $400 per hour to be a reasonable rate for litigator with 20 years of experience); *Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724(PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (noting that "precedent in the Southern District reveal[ed] that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time.") (internal quotations omitted).

The Court also considers as instructive the rates courts have previously awarded to Ms. Kelly. *See Indep. Project*, 397 F. Supp. 3d at 496; *Jean-Louis*, 342 F. Supp. 3d at 442. In 2010, Ms. Kelly was awarded rates by the Southern District ranging between $250 and $350 per hour. (Docket 122 ¶ 35); *see De Los Santos v. Just Wood Furniture, Inc.*, No. 7:05-CV-9369(WWE), 2010 WL 445886, at *2-3 (S.D.N.Y. Feb. 2, 2010) (which granted fee application of $250 to $350 per hour); *Mugavero*, 2010 WL 451045, at *4 (which held that Ms. Kelly's hourly rate of $350 was reasonable). Accordingly, after considering Ms. Kelly's experience, reputation, and relevant community standards, the Court finds that Ms. Kelly's hourly rate of $400 is slightly high and reduces it to $375.

## 2. Reasonable Number of Hours Expended

"The party seeking attorney's fees also bears the burden of establishing that the number of hours for which compensation sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06 Civ. 7148(GBD)(HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F.3d at 173. "[D]istrict courts must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *DiFillippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998) (citing *DiFillippo*, 759 F.2d at 236); *see also New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1146 (2d Cir. 1983) (noting that the determination of reasonable hours expended is "best made by the district court on the basis of its own assessment of what is appropriate for the scope and complexity of the particular litigation."). Thus, as noted, hours that are excessive, redundant, or vague are to be excluded, "and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch*, 148 F.3d at 173 (quoting *New York State Ass'n for Retarded Children*, 711 F.2d at 1146); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("We do not require that the court set forth item-by-item findings concerning what may be countless objections to individual billing items.").

Ms. Kelly requests fees for 100 hours and 36 minutes of work. (Docket No. 122 ¶ 22). In support of her motion, Ms. Kelly submitted contemporaneous time sheets that set forth the tasks she performed on this matter. (Docket No. 122-5). Ms. Kelly justifies her requested fees on the basis that her records "clearly set forth the scope" of her work performed on this case. (Docket No. 145 at 9). Ms. Kelly further maintains that she "came into the *pro se* case that had been pending for nearly two years without any discovery demands having been made by plaintiff, obtained an extension, served document demands and interrogatories and set up and conducted depositions." (*Id.*). Plaintiff argues, however, that Ms. Kelly's requested fees are neither fair nor reasonable based on the "limited scope" of her work on this matter. (Docket No. 143, at 7-8). Specifically, Plaintiff maintains that from February 2016 through October 2016, Ms. Kelly's work on this case was "primarily focused on discovery, including two depositions, two short status conferences with the Court, and document review and research." (*Id.* at 7). Plaintiff also contends that his case has "continued for several years since Ms. Kelly's withdrawal and will require substantial work by multiple attorneys." (*Id.* at 8).

i. **Hours Reasonably Expended Prior to Retainer Agreement**

Plaintiff opposes Ms. Kelly's requested fees on the ground that it includes several hours of research that occurred prior to accepting his case and memorializing their relationship pursuant to the Retainer Agreement. (Docket No. 143 at 7-8). Between February 9, 2016 and March 10, 2016, Ms. Kelly billed a total of roughly nine hours for time expended consulting with Plaintiff, reviewing relevant documents, and investigating and researching Plaintiff's claims prior to signing the Retainer Agreement. (Docket No. 122-5 at 2). The Court finds Ms. Kelly's request for fees for the time expended prior to accepting Plaintiff's case is appropriate, albeit a little excessive. *See Jean-Louis*, 342 F. Supp. 3d at 443 (which found that attorney's hours spent

13

before notice of appearance was filed was reasonable, noting that "[t]here is no principle of law that forecloses recovery of reasonable attorney's fees in investigating a claim, researching the law and drafting a complaint, even though no action was pending at the time."); *Murray ex rel. Murray v. Mills*, 354 F. Supp. 2d 231, 238-39 (E.D.N.Y. 2005) (which found that attorney could be awarded fees for time spent consulting with plaintiffs and researching the "subject matter" before counsel commenced work).

## ii. Hours Reasonably Expended Withdrawing from the Case

Plaintiff also objects to Ms. Kelly's request for fees for hours expended on withdrawing from the case. (Docket No. 143 at 7-8). Ms. Kelly's time entries include roughly six hours for work relating to her motion to withdraw from Plaintiff's case. (Docket No. 122-5 at 6). This activity, however, was not "in furtherance of obtaining a favorable judgment on behalf of plaintiff, and thus not properly the subject of a charging lien." *Stair*, 722 F. Supp. 2d at 271; *see also Cutner & Assocs., P.C. v. Kanbar*, No. 97-CV-1902(SAS), 1998 WL 104612, at *3 (S.D.N.Y. Feb. 4, 1998) ("I do not believe that [plaintiff] should be required to pay for time that [counsel] spent in making the motion to withdraw as counsel."). Accordingly, the six hours relating to Ms. Kelly's motion to withdraw will be excluded.

## iii. Vague or Excessive Entries

"Regarding vague entries, some specificity is required in time entries to enable the court to determine whether a reasonable amount of time was spent on each activity." *Indep. Project*, 397 F. Supp. 3d at 499. Many of Ms. Kelly's time entries are vague. These include, for example, "review additional docs," "drafting demands," "Draft letter to ADA Brian Conway," "Pla here. Discuss status & discovery," "Prep for conference," and "Begin prep for Molina Dep." (Docket No. 122-5, at 2-5); *see Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307,

313-14 (S.D.N.Y. 2009) (finding entries such as "telephone call to [party]," and "discussion with [party]" to be overly vague); *Amato v. City of Saratoga Springs*, 991 F. Supp. 62, 65-66 (N.D.N.Y. 1998) (finding entries such as "review research," "review deposition transcripts," and "prepare deposition questions" to be overly vague); *Rosso v. Pi Mgmt. Assosc.*, No. 02 Civ. 1702(KNF), 2006 WL 1227671, at *4 (S.D.N.Y. May 3. 2006) (finding entries such as "[r]eview of documents" vague because they prevent the court from determining "whether the attorney who performed the work spent his or her time effectively"). Ms. Kelly also used block-billing in a number of entries, such that the reasonableness of these entries could not be determined. *See Stair*, 772 F. Supp. 2d at 271. For example, on July 7, 2016, Ms. Kelly billed 135 minutes for: "Conference with client; draft letters to IAD & DA for investigations; amend subpoena & addendum to prior esq. O'Meara; draft letter of auth from client to O'Meara -Mail to O'Meara **FED EX**." (Docket No. 122-5 at 4). A number of entries billed for time expended requesting payments from Plaintiff are equally vague. (*See, e.g.*, Docket No. 122-5 at 5, billing for "Rec'd & respond to email re: EBT dates, confirm & notify Pla by email-include DeVito's bill."). Furthermore, the time expended by Ms. Kelly on certain tasks appears excessive or unnecessary. For example, there are numerous entries for time spent simply receiving documents or other minute tasks, such as "Rec'd Def's response," "rec'd responses," "prepared list," and "Rec'd Order." (Docket No. 122-5 at 2-5). In addition, Ms. Kelly spent over 20 hours preparing for Defendant Molina's deposition. (Docket No. 122-5 at 4-5). This is an unreasonable amount of time given Ms. Kelly's years of experience.

Additionally, Ms. Kelly's representation of Plaintiff lasted for less than nine months out of the six years that this matter has been pending before the Court. Moreover, Plaintiff's case still requires substantial work by current counsel and is far from being resolved. Thus, the Court

finds that Ms. Kelly's contribution to the case does not appear to support the *quantum meruit* fees requested ($40,240.00 for the 100 hours and 36 minutes of work billed).[4] Ms. Kelly's most important contributions to this case appear to be two letters she wrote and follow-up phone calls she made to ADA Brian J. Conway and to ADA John J. Carmady in May 2016, which took a little over two hours of her time. (Docket No. 122-5 at 3). These letters arguably led to the vacatur of Mr. Pettiford's conviction.

An "[a]ward in *quantum meruit* should in all cases reflect the court's assessment of the qualitative value of the services rendered, made after weighing all relevant factors considered in valuing legal services." *Biagioni v. Narrows MRI and Diagnostic Radiology, P.C.*, 127 A.D.3d 800, 801 (2d Dept. 2015) (internal quotations omitted). Considering concerns regarding vague and block entries, excessive hours on certain tasks, and Ms. Kelly's discrete role in this matter, the Court determines that a 55% across-the-board reduction is appropriate.[5] *See Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014) (upholding district court's 50% across-the-board reduction of hours in light of "concerns regarding unspecific conferences, telephone calls, email correspondence, and reviews."); *see also Pennacchio v. Powers*, No. 05CV985(RRM)(RML), 2011 WL 2945825, at *2 (E.D.N.Y. July 21, 2011) (60% reduction

---

[4] *See Houston v. Cotter*, 234, F. Supp 3d 392, 398 (E.D.N.Y. 2017) ("[T]he Supreme Court has recognized that 'plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U.S.C § 1988'") (quoting *Hensley*, 461 U.S. at 440 (1983)); *Harty v. Par Builders, Inc.*, No. 12-CV-2246(CS), 2016 WL 616397, at *2 (S.D.N.Y. Feb. 16, 2016) ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees … is the degree of success obtained by the plaintiff.") (internal quotations omitted). While the actual degree of success cannot be assessed at this time, the Court notes that Ms. Kelly's work will not substantially affect the final outcome given her limited role in this litigation.

[5] For the reasons stated herein, the across-the-board reduction will also apply to Ms. Kelly's request for $2,715.00, which represents the balance owed for work performed prior to the execution of the Retainer Agreement.

because the time records were extremely vague.). Accordingly, the Court awards Ms. Kelly

$17,433.75[6] in attorney's fees.

## 3. Costs

In addition to reasonable fees in *quantum meruit*, an award of attorney's fees should also "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" during the litigation. *Yea Kim v. 167 Nail Plaza, Inc.*, No. 05Civ8560 (GBD)(GWG), 2009 WL 77876, at *10 (S.D.N.Y. Jan. 12, 2009). "The fee applicant bears the burden of adequately documenting and itemizing the costs requested." *Pennacchio*, 2011 WL 2945825, at *2. Ms. Kelly submitted statements adequately supporting her request for reimbursements for costs in the amount of $2,083.64, (Docket No. 122-3), and Plaintiff does not dispute this request, (Docket No. 143 at 7). Accordingly, Ms. Kelly is entitled to $2,083.64 in costs.

## 4. Interest

Ms. Kelly requests interest in the amounts of 1.5% per month and 18% per annum. (Docket No. 122 ¶ 27). This request is denied. The Court finds that Ms. Kelly is entitled to interest of nine percent per annum pursuant to Section 5004 of the N.Y. C.P.L.R. *See* N.Y. C.P.L.R. § 5004 ("Interest shall be at the rate of nine per centum per annum, except where otherwise provided by statute.").

---

[6] This number is calculated by taking the total number of minutes billed for time before and after the Retainer Agreement was executed (6559 minutes) and dividing it by 60 minutes, for a total number of hours of 109.32. (Docket No. 122-5). When this amount is reduced by the six hours spent on the motion to withdraw from the case, the total number of hours is 103.32. After applying the 55% across-the board reduction in hours, 46.49 hours remain. Multiply that by the reasonable hourly rate of $375, and Ms. Kelly is entitled to attorney's fees in *quantum meruit* in the amount of $17,433.75.

## III. CONCLUSION

For the foregoing reasons, Ms. Kelly's motion is granted in part and denied in part. The Court finds that Ms. Kelly is entitled to (1) attorney's fees in the amount of $17,433.75, (2) costs in the amount of $2,083.64, and (3) a charging lien pursuant to N.Y. Judiciary Law § 475.

The Clerk is respectfully requested to terminate the pending motion (Docket No. 120).

Dated: March 20, 2020
       White Plains, New York

                                    **SO ORDERED:**

                                    _/s/ Judith C. McCarthy_
                                    JUDITH C. McCARTHY
                                    United States Magistrate Judge