UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRIAN D. PETTIFORD,

                     Plaintiff,

       -against-

THE CITY OF YONKERS, YONKERS POLICE
OFFICER VINNIE DEVITO, YONKERS POLICE
OFFICER ALEX DELLADONNA, YONKERS
POLICE OFFICER PETER SCHWARTZ, YONKERS
POLICE OFFICER DENNIS MOLINA #646,
YONKERS POLICE OFFICER CHRISTIAN KOCH
#699, ALL DEFENDANTS INDIVIDUALLY AND
IN THEIR OFFICIAL CAPACITIES AS EMPLOYEES
OF THE CITY OF YONKERS,

                   Defendants.
------------------------------------------------------------X

**OPINION AND ORDER**

14 Civ. 6271 (JCM)

      On February 24, 2020, Plaintiff Brian D. Pettiford ("Plaintiff") moved for reconsideration under Rule 6.3 of the Local Civil Rules of the United States District Courts for the Southern and Eastern District of New York ("Local Civil Rule 6.3") of this Court's Opinion and Order dated February 13, 2020 (the "Order"), (Docket No. 151), which denied Plaintiff's motion for leave to amend his complaint to allege a *Monell* claim. (Docket Nos. 153, 154).  Plaintiff also requests leave for oral argument and permission to file affidavits in support of the requested relief. (Docket No. 154 at 12[1]).  Defendants oppose the motion. (Docket No. 159).  Plaintiff filed a reply in further support of his motion. (Docket No. 160).  For the reasons that follow, Plaintiff's motion for reconsideration is denied.[2]

---

[1] All page number citations refer to the page number assigned upon electronic filing.

[2] This action is before me for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 21).

## I. LEGAL STANDARD

"The decision to grant or deny [a motion for reconsideration under Local Civil Rule 6.3] is within the sound discretion of the district court." *Dellafave v. Access Temporaries, Inc.*, No. 99 CIV. 6098(RWS), 2001 WL 286771, at *1 (S.D.N.Y. Mar. 22, 2001).  In the Second Circuit, granting reconsideration "is an *extraordinary remedy* to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Peterson v. Home Depot U.S.A., Inc.*, No. 11 Civ. 5747 (ER), 2014 WL 1355622, at *1 (S.D.N.Y. Apr. 4, 2014) (quoting *Parrish v. Sollecito*, 253 F. Supp. 2d 713, 715 (S.D.N.Y. 2003)).  The standard for granting a motion for reconsideration is "strict," and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court has overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  Thus, reconsideration requires a movant to demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotations omitted).  To this end, the movant "may not use a motion under Rule 6.3 to advance new facts, issues or arguments not previously presented to the Court." *McGee v. Dunn*, 940 F. Supp. 2d 93, 100 (S.D.N.Y. 2013) (internal citations omitted); *see also Metro. Opera Ass'n, Inc. v. Local 100*, No. 00 Civ. 3613(LAP), 2004 WL 1943099, at *2 (S.D.N.Y. Aug. 27, 2004) (holding that the movant may not use the motion "to start a new round of arguments," nor "should the Court be expected to wade through lengthy papers that simply reiterate in slightly different form the arguments already made in the party's original papers.").  "The burden on the movant is high to ensure finality in decisions, discourage repetitive arguments and to prevent a losing party from

2

rearguing a decision after examination in an attempt to correct prior inadequacies." *Rijos v. New York Cmty. Bancorp, Inc.*, No. CV-09-5720, 2011 WL 1496800, at *1 (E.D.N.Y. Apr. 15, 2011).

## II.  BACKGROUND

Familiarity with the relevant facts and procedural history of this case is presumed.  In brief, Plaintiff brings this action under 42 U.S.C. § 1983 against Defendants City of Yonkers ("Yonkers"), Police Officer Vinnie Devito, Police Officer Alex Delladonna, Police Officer Peter Schwartz, Police Officer Dennis Molina, and Police Officer Christian Koch ("Koch") (collectively "Defendants"), alleging an illegal search, false arrest, malicious prosecution, and wrongful conviction arising from an allegedly fraudulent search warrant affidavit (the "Search Warrant Affidavit").  On July 19, 2019, Plaintiff filed his motion for leave to amend his complaint to include, among other things, two additional claims: (1) a claim of the denial of due process and a fair trial, and (2) a claim against Defendant Yonkers pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). (Docket Nos. 136, 137, 138).  In its February 13, 2020 Order, the Court granted Plaintiff's motion to add a cause of action for the denial of due process and a fair trial, and denied Plaintiff's motion to add a *Monell* claim against Yonkers. (Docket No. 151).  The Court concluded that Plaintiff's proposed *Monell* claim was futile on the ground that he failed to plausibly allege a claim under any of the four *Monell* theories. (*Id.* at 12-17).  On February 18, 2020, Plaintiff filed his Amended Complaint. (Docket No 152).

## III.  DISCUSSION

In the instant motion, Plaintiff argues that reconsideration of the Court's Order denying his *Monell* claim as futile is appropriate because "new evidence" derived from Koch's deposition, taken on November 19, 2019, has revealed facts to support a *Monell* claim under a

failure to train or supervise theory. (Docket No. 154 at 5).  Defendants oppose the motion on the grounds that: 1) Plaintiff raises entirely new legal theories as the basis for leave to amend, 2) Plaintiff has not sufficiently demonstrated that controlling law exists to alter the Court's Order, and 3) Plaintiff's citations to the record are insufficient to plausibly allege a *Monell* claim. (Docket No. 159).  The Court has reviewed the parties' submissions, and finds that Plaintiff has not shown that the Court has "overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion." *Chepilko v. Cigna Life Ins. Co. of New York*, 952 F. Supp. 2d 629, 631 (S.D.N.Y. 2013).  Furthermore, although Plaintiff bases his motion upon "new" evidence, the Court finds that Plaintiff's proffered evidence is not, in fact, "newly discovered," and thus not properly before the Court on a motion for reconsideration.  Finally, even assuming Plaintiff's evidence is newly discovered, it does not alter the Court's previous conclusion that Plaintiff did not plausibly allege a *Monell* claim for failure to train or supervise.

**A.  Plaintiff's Proffered Evidence is Not "Newly Discovered"**

The Court is not persuaded that the evidence set forth by Plaintiff is "newly discovered." In order for evidence to be considered "newly discovered" on a motion for reconsideration, it must be "evidence that was truly newly discovered or could not have been found by due diligence." *United States v. Potamkin Cadillac Corp.*, 697 F.2d. 491, 493 (2d Cir. 1983) (internal quotations omitted); *see also Lima LS PLC v. Nassau Reinsurance Grp. Holdings, L.P.*, 160 F. Supp. 3d 574, 578 (S.D.N.Y. 2015) (same).  Newly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration. *See Lima*, 160 F. Supp. 3d at 578. (which denied motion for reconsideration based on evidence "in response to the court's rulings" when this evidence was available "prior to the Court's Order."); *Goldstein v. New York*, No. 00 Civ. 7463(LTS), 2001 WL 893867, at *1 (S.D.N.Y. Aug. 7, 2001) (which held that a

motion to reconsider is not an opportunity "to put forward additional arguments which the movant could have made, but neglected to make before judgment.") (internal quotations omitted).  Thus, "only when evidence is truly newly discovered does it become a proper grounds for a motion for reconsideration." *Atlantic States Legal Foundation, Inc. v. Karg Bros., Inc.*, 841 F. Supp. 51, 56 (N.D.N.Y. 1993).

Here, although Plaintiff conducted Koch's deposition after the completion of the briefing on Plaintiff's motion to amend, it cannot be said that Koch's deposition testimony from November 2019 was not available to Plaintiff prior to this Court's February 13, 2020 Order. *See Kopperl v. Bain*, No. 3:09-CV-01754(CSH), 2016 WL 310719, at *3 (D. Conn. Jan. 26, 2016) (which denied motion to reconsider based on evidence derived from deposition that was conducted prior to court's ruling, and noting, "the standard applied in motions for reconsideration is whether the evidence was discovered prior to the ruling, not the completion of briefing.").  Accordingly, the Court finds that Plaintiff's proffered evidence is not newly discovered, and therefore, not properly before the Court on his motion for reconsideration.

**B.  Plaintiff's Proffered Evidence Would Not Alter the Court's Previous Order**

Even assuming, *arguendo*, that Plaintiff's proffered evidence constitutes newly discovered evidence, it still does not warrant granting Plaintiff reconsideration of the Court's Order.  As discussed in the Order, a municipality may be liable for the failure to supervise its subordinates "only where the need to act is so obvious, and the inadequacy of the current practices so likely to result in a deprivation of federal rights, that the municipality or official can be found deliberately indifferent to the need." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007).  "Such a complaint must allege that 'the need for more or better supervision . . . was obvious,' but that the defendant 'made no meaningful attempt' to prevent the constitutional

5

violation." *Missel v. Cty. of Monroe*, 351 F. App'x 543, 546 (2d Cir. 2009) (quoting *Amnesty Am. v. Town of W. Hartford*, 36 F.3d 113, 127 (2d Cir. 2004)).  Moreover, to state a claim based on the failure to train, a plaintiff "must allege facts which support an inference that the municipality failed to train its police officers, that it did so with deliberate indifference, and that the failure to train caused his constitutional injuries." *Triano v. Town of Harrison*, NY, 895 F. Supp. 3d 526, 540 (S.D.N.Y. 2012).  A plaintiff must also "plausibly allege a specific deficiency in the municipality's training." *Tieman v. City of Newburgh*, No. 13-CV-4178(KMK), 2015 WL 1379652, at *22 (S.D.N.Y. Mar. 26, 2015).

In its Order, the Court found that Plaintiff failed to allege facts sufficient to plead a *Monell* claim under a failure to train or supervise theory. (Docket No. 151 at 14-17).  Regarding Plaintiff's proposed failure to supervise claim, the Court held that Plaintiff did not plausibly allege that Yonkers was on notice of Koch's behavior, or that when Yonkers became aware of such behavior, Yonkers deliberately ignored it. (*Id.* at 15).  The Court held that Plaintiff's allegations relating to a failure to train were also deficient because they were conclusory. (*Id.* at 16).  Specifically, the Court held that the allegations did "not specify any deficiency about Yonker's training program, nor do they explain how any deficiency in the training *caused* his injury." (*Id.*) (emphasis added).  Plaintiff's present motion does not change this conclusion.

In support of his motion for reconsideration, Plaintiff maintains that his *Monell* claim under the theory of failure to train or supervise is supported by Koch's deposition testimony in which he testified that he was never properly trained as to "the amount of information" that was required to support a search warrant affidavit. (Docket No. 154 at 6-12).  Plaintiff also cites to testimony in which Koch claims that "his training in search warrant applications was so deficient that at the time he sponsored the Pettiford affidavit in March of 2012, he 'didn't know what an

affidavit was,' and believed he was just filling in blanks on a form." (*Id.* at 7).  Plaintiff further points to testimony in which Koch states that at the time he executed the Search Warrant Affidavit, "this was just a form . . . This is a form where you filled in the blanks, and that's all I did. You go right in front of a judge for signature, and as long as the judge signed it, no one looked at it, and everybody was on board, and that's it." (*Id.* at 8).  Plaintiff maintains that this demonstrates that "the entire supervisory apparatus in the narcotic's division" was indifferent to his behavior. (*Id.*).

Plaintiff further argues that Koch's deposition testimony shows that his "lack of supervision and training in police investigative work extended well-beyond search warrants into every facet of his police work in the narcotics division." (*Id.* at 9).  For instance, Plaintiff cites to testimony in which Koch states that in his capacity as a Yonkers' police officer, he "went to training three times a year," that these trainings were "very textbook and it wasn't very detailed," and that he was never sent to a formal training school for Yonkers Police detectives. (*Id.*). Plaintiff maintains that "the [Search Warrant Affidavit] submitted in the Pettiford investigation has all of the same infirmities evidenced by [] Koch's lack of supervision and training." (*Id.* at 10).  Plaintiff further cites to Koch's testimony stating that when he drafted the Search Warrant Affidavit, he did not know what it means to be "duly sown and deposed." (*Id.* at 11).  Finally, Plaintiff maintains that Koch's purported lack of training caused Plaintiff's wrongful conviction. (*Id.* at 11-12).  Plaintiff quotes Koch's deposition testimony in which he testified that when he wrote the Search Warrant Affidavit, he "believed he was simply filling out a form, a form that he had no obligation to certify was accurate and truthful." (*Id.* at 11).  Koch explained at his deposition that it was his "obligation to fill out the form. [He] didn't understand the severity of

7

signing to something, and having not be true or instances in it, that turned out to be not true, where [he] was open to some kind of liability." (*Id.* at 12).

Although troubled by Koch's testimony, the Court finds that Plaintiff's proffered evidence does not alter its previous conclusion that Plaintiff's allegations do not give rise to a *Monell* claim premised on a failure to train or supervise. *See Rijos*, 2011 WL 1496800, at \*1 (which denied a motion for reconsideration where new evidence derived through discovery "does nothing to change the court's previously stated conclusion that Plaintiff's allegations" did not state a claim). Plaintiff's new evidence still fails to plausibly allege a specific deficiency in the training program. Furthermore, there is no new evidence that meets the "stringent standard" that any alleged failure to train or supervise was done with a "deliberate indifference," or that these failures *caused* Plaintiff's specific constitutional violation. *See Triano*, 895 F. Supp. 2d at 534, 540. Indeed, Plaintiff's Amended Complaint alleges that "Koch signed the Search Warrant Affidavit *knowing it to contain false information*." (Docket No. 152 at 7) (emphasis added). However, there are no new facts in Plaintiff's motion giving rise to an inference that Koch's alleged behavior of knowingly executing the fraudulent Search Warrant Affidavit was the result of any lack of training or supervision on the part of Yonkers. *See Simms v. City of New York*, No. 10-CV-3420(NGG)(RML), 2011 WL 4543051, at \*2 (S.D.N.Y. Sept. 28, 2011) (which dismissed failure to train claim where there was "not enough factual material in the [c]omplaint for the court to reasonably infer that the police misconduct . . . was the result of anything other than the individual acts of the arresting officers."); *Doe v. City of New York*, No. 09-CV-9895(BSJ), 2012 WL 2900483, at \*2 (S.D.N.Y. July 2, 2012) ("The [a]mended [c]omplaint contains no facts elaborating on (or even theorizing as to) the defective nature of the [] training program, let alone an allegation as to *how* a defect in training … caused her harm.") (emphasis

added); *Alwan v, City of New York*, 311 F. Supp. 3d 570, 579 (E.D.N.Y. 2018) ("After reviewing this evidence, the court cannot discern any 'specific deficiency in the city's training program' that was 'closely related' to Plaintiff's alleged injuries.") (internal citations omitted). Thus, "any subsequent amendment to the complaint based on this new evidence presented" would still be futile. *Audio Emotion S/A v. McIntosh Grp., Inc.*, 15 Civ. 05735(AT)(KNF), 2017 WL 6492506, at *3 (S.D.N.Y. Jan. 11, 2017).

Because Plaintiff's proffered new evidence has not cured any of the deficiencies previously identified by the Court, it would not change the conclusion reached by the Court in its previous Order. *See Audio Emotion*, 2017 WL 6492506, at *3 (which denied a motion for reconsideration where "Plaintiff's new evidence does not cure the underlying deficiencies previously identified by the Court"); *Almonte v. City of Long Beach*, No. CV. 04-4192(JS)(JO), 2005 WL 1971014, at *3 (E.D.N.Y. Aug. 16, 2005) (which denied motion for reconsideration where the court was "confident" that new evidence "would not affect [its] ruling on reconsideration). In sum, Plaintiff's proposed evidence does not constitute newly discovered evidence that, "had [it] been considered, might have reasonably altered the result" of the Court's Order denying Plaintiff's motion to amend his complaint to assert a *Monell* claim. *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) (internal quotations omitted). For these same reasons, Plaintiff fails to show there is a "clear error to correct or manifest injustice to prevent." *Audio Emotion*, 2017 WL 6492506, at *3. Accordingly, Plaintiff's motion for reconsideration of the Court's Order denying his motion to amend to allege a *Monell* claim is denied.

**IV.  CONCLUSION**

        For the foregoing reasons, Plaintiff's motion for reconsideration is denied.  Plaintiff's

request for leave for oral argument and permission to file affidavits in support of the requested

relief is further denied.  The Clerk is respectfully requested to terminate the pending motion

(Docket No. 153).


Dated:    April 27, 2020
            White Plains, New York


                                 **SO ORDERED:**

                                 JUDITH C. McCARTHY
                                 United States Magistrate Judge